**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **Moises Adrian Tax Tiu,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**David Wesling, et al.,**<br><br>**Respondents.** | **Civil Action No.**<br>**1:26-cv-13462-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the writ of habeas corpus filed by Moises Adrian Tax Tiu ("Tax Tiu" or "petitioner") and his subsequent bond hearing. Petitioner moved to enforce judgment on the grounds that he is being detained by David Wesling and other named respondents (collectively, "respondents" or "the government") in violation of his rights under the Fifth Amendment of the Constitution. Tax Tiu avers that at his bond hearing, the Immigration Judge ("IJ") failed to afford him due process when the IJ found petitioner a flight risk and denied bond.

Respondents contend that this Court should deny the petition because petitioner has not exhausted administrative remedies under 8 U.S.C. § 1226(e) and, in any event, the evidence in the record supports a finding that Tax Tiu is a

flight risk. For the reasons set forth herein, the Motion to Enforce Judgment will be allowed and petitioner is to be immediately released.

## I. Background

### A. Facts

Tax Tiu is a native citizen of Guatemala who first came to the United States without inspection in 2006 and subsequently graduated from high school. Following the birth of his U.S. citizen daughter in 2011, Tax Tiu left the United States and went to Portugal with his Portuguese wife and eventually returned to his home country of Guatemala. In 2024, he re-entered the United States without inspection or admission by an immigration officer. Petitioner was issued a Form I-860, Notice and Order of Expedited Removal, and passed a credible fear interview due to the alleged severe harm he experienced in Guatemala. On May 14, 2024 Tax Tiu was released on parole under 8 U.S.C. § 1182(d)(5) and proceeded to retain a lawyer who assisted him in filing a timely I-589, Application for Asylum and Withholding of Removal. His parole expired on May 14, 2025.

On July 17, 2026, Tax Tiu was arrested for Assault and Battery on a Family/Household Member. He appeared for arraignment in Waltham District Court on July 20, 2026 where he was arrested and detained by Immigration and Customs Enforcement ("ICE"). Tax Tiu has no additional criminal history. He filed

a petition for writ of habeas corpus with this Court which was allowed on August 21, 2026, ordering the government to provide petitioner with a bond hearing that complied with the constitutional standards set forth in Hernandez-Lara v. Lyons. 10 F.4th 19 (1st Cir. 2021). On August 28, 2026, he was afforded a bond hearing.

Tax Tiu filed the pending Motion to Enforce Judgment alleging the bond hearing violated his due process rights and that the evidence presented could not, as a matter of law, support the IJ's finding to deny bond.

## II. Analysis

### A. Exhaustion

The government argues that the Court should deny the petition because Tax Tiu has failed to exhaust his administrative remedies by appealing the IJ's bond decision to the Board of Immigration Appeals ("BIA"). The government contends that judicial review of the bond decision is, therefore, precluded under 8 U.S.C. § 1226(e). The Court disagrees.

There is no statutory exhaustion requirement for petitioner's due process claim; it is governed by common law and sound judicial discretion. Brito v. Garland, 22 F.4th 240, 255-56 (1st Cir. 2021). As this session and several other sessions of this Court have held, exhaustion is not required where a

petitioner may suffer irreparable harm "if unable to secure immediate judicial consideration of his claim." Carela v. Wesling, No. CV 26-12873-NMG, 2026 WL 2085501, at *2 (D. Mass. July 17, 2026) (internal quotations omitted); Miti v. Moniz, 827 F. Supp. 3d 206, 216 (D. Mass. 2026); Guevara v. Moniz, No. 26-CV-12559-PBS, 2026 WL 2017258 (D. Mass. July 13, 2026). Being incarcerated or unlawfully detained pending the resolution of a bond appeal constitutes irreparable harm that necessitates judicial review. Miti, 827 F. Supp. 3d at 216.

Such is the case here. As petitioner notes, the appeal process could take months and up to years during which time he would remain detained resulting in irreparable harm. The Court will not therefore require exhaustion of administrative remedies in this case.

**B. Due Process**

**i. Legal Standard**

The Court's authority to review petitioner's constitutional challenge of the bond determination is limited. Relief is appropriate only where the IJ's decision is "so arbitrary it would offend fundamental tenants of due process" such that no other reasonable IJ could come to the same conclusion. Carela v. Wesling, No. CV 26-12873-NMG, 2026 WL 2085501, at *2 (D. Mass. July 17, 2026). To show that relief is appropriate, petitioner can either

> point to the language of the immigration judge's opinion or demonstrate that the evidence itself could not -- as a matter of law -- have supported the immigration judge's decision to deny bond.

Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019) (internal quotations omitted). When evaluating the due process claim, the Court cannot merely disagree with the IJ's weighing of the evidence. Jerges Enrique Delepiani Olivero v. Antone Moniz, et al., No. CV 26-13625-NMG (D. Mass. 2026), Docket No. 11 at 7. Here, petitioner does not claim that the IJ applied the wrong legal standard, rather he contends that the evidence presented could not, as a matter of law, support the IJ's denial of bond.

**ii. Discussion**

In his bond order, the IJ properly identified the legal standard by which to evaluate the petition under § 1226(a): the burden is on the Department of Homeland Security ("DHS") to establish by clear and convincing evidence that petitioner poses a danger to the community or by preponderance of evidence that petitioner is a flight risk. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). The question before this Court is therefore whether the evidence presented could support the IJ's finding that DHS met its burden by showing that petitioner posed

a flight risk.[1] This Court concludes that the IJ's findings are incompatible with the evidence on the record.

In determining that petitioner is a flight risk, the IJ relied on: (1) the inconsistent recantation by petitioner of his immigration history, (2) the multiple returns by petitioner to his home country and entries into the United States without inspection, and (3) the pending charge against petitioner for assault and battery on a family member. The IJ found that such conduct, taken together, support a finding that petitioner's "relief from removal [is] highly speculative" making him a significant flight risk.

First, the "inconsistent recantation" to which the IJ refers is one erroneous date on Tax Tiu's I-589 Application for Asylum Form that suggest Tax Tiu was in his home country when he was in fact in the United States. That petitioner was in this country for periods following his arrival in 2006 is corroborated by Tax Tiu's high school diploma provided in the record showing a graduation from Waltham High School in 2009. There is no evidence to suggest that the erroneous date was anything other than a mistake or that Petitioner was being deceitful about his time spent in the United States.

---

[1] The Court does not address petitioner's claim that the IJ failed to evaluate alternatives to detention.

The IJ's finding that Tax Tiu "frequently" returned to his home country is also unsupported by the record which indicates that petitioner returned to Guatemala once and unlawfully entered the United States twice. He re-entered this country in 2024, at which time he passed a credible fear interview based on the alleged severe harm he experienced while in Guatemala. Following that re-entry, Tax Tiu was released on parole and he hired an immigration lawyer to help him file an Application for Asylum and Withholding of Removal, demonstrating compliance with federal law.

Finally, the IJ relied on an uncorroborated police report to support his finding that petitioner poses a flight risk. While the IJ may consider the description of underlying conduct in a police report, he cannot give it substantial weight without a conviction or corroborating evidence. Rosa v. Garland, 114 F.4th 1, 17 (1st Cir. 2024); Milhomem v. Wesling, No. CV 26-13292-NMG, 2026 WL 2427591, at *2 (D. Mass. Aug. 18, 2026). In the subject police report, the arresting officer described a dispute over keys to a car between Tax Tiu and his girlfriend that did not result in visible physical harm to his girlfriend. The IJ credited the police report as reliable and corroborated even though there was no witness statement or corroborating evidence provided by DHS, and in spite of petitioner's objection under oath. Carela v. Wesling, No. CV 26-12873-NMG, 2026 WL

2085501 (D. Mass. July 17, 2026) (finding IJ's determination arbitrary because there was no evidence in the record to support a finding that the alleged altercation was physical). Such a finding is arbitrary and inconsistent with the record.

The IJ proceeded to conclude that the police report supported a finding that petitioner is a flight risk because the alleged assault charges "may affect petitioner's discretionary forms of relief." Docket No. 14-3 at 4. Although the IJ "need not discuss ad nauseum every piece of evidence", his reasoning must be clear from and supported by the record. Carela, 2026 WL 2085501, at *3 (quotations omitted). While an uncorroborated police report disputed by petitioner may be relevant for dangerousness, it has limited bearing on his risk of flight. Miti v. Moniz, 827 F. Supp. 3d 206 (D. Mass. 2026) (finding that an uncorroborated police report of a domestic dispute without more did not establish *dangerousness* (emphasis added)); Guevara v. Moniz, No. 26-CV-12559-PBS, 2026 WL 2017258, at *1 (D. Mass. July 13, 2026). Furthermore, petitioner appeared for his arraignment for the alleged domestic assault charges in the District Court in Waltham, a fact seemingly ignored by the IJ.

The IJ's determination that petitioner is a flight risk is an unreasonable inference based on the facts in the record. After finding that the petitioner has a fixed address, work authorization and stable employment, letters of community

support and a daughter who is a United States citizen, the IJ proceeded to rest his conclusion that petitioner is a flight risk on findings unsupported by the record. Miti, 827 F. Supp. 3d at 218; Carela, 2026 WL 2085501, at *3. The bond hearing did not comport with due process.

**iii. Remedy**

Having determined that petitioner's bond hearing violated his constitutional rights, the Court turns to consideration of the appropriate remedy. District Courts retain broad discretion in fashioning habeas relief. Cesvette v. Moniz, No. 26-CV-12662-AK, 2026 WL 2494666 (D. Mass. Aug. 25, 2026) (citing United States v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000)). When the Court finds a petitioner is not a flight risk and does not pose a risk of dangerousness, it can order further process or immediate release. Cesvette, 2026 WL 2494666, at *4(collecting cases); Miti, 827 F. Supp. 3d at 220; Guevara v. Moniz, No. 26-CV-12559-PBS, 2026 WL 2017258, at *2 (D. Mass. July 13, 2026).

Here, petitioner's continued unlawful detention violates his due process rights. The government's failure to provide a bond hearing that complied with the constitutional standards in Hernandez-Lara v. Lyons, 10 F. 4th 19 (1st Cir. 2021) violated this Court's August order. Docket No. 12.

## III. Order

For the foregoing reasons the Motion to Enforce Judgement [Docket No. 13] is **ALLOWED.** Respondents are directed to release Petitioner forthwith.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: October 15, 2026